Sutton, J.
*456 ¶ 1 Daniel Galeana Ramirez (Galeana Ramirez), Alejandro Ramirez (Ramirez), and Steven Nicolas Russell (Russell) appeal their multiple convictions. They argue that the trial court violated their right of confrontation by not allowing them to confront the technician who extracted the data from Russell's cell phone found at the scene of one of the incidents that led to a conviction. In the published portion of the opinion, we hold that the confrontation clause did not require testimony from the technician because he was not a "witness against" the appellants. In the unpublished portion of the opinion, we reject all additional arguments except for Russell's claim that his judgment and sentence contains a scrivener's error. Accordingly, we affirm the appellants' convictions, but we remand to correct the scrivener's error in Russell's judgment and sentence.[1]
FACTS
I. BACKGROUND
¶ 2 This case arises out of two related incidents that occurred during the night of October 24 and the early morning of October 25 in 2015.
¶ 3 Jose Leiva-Aldana and Agustin Morales-Gamez were walking home on the night of October 24, when they are accosted by two men. The men demanded money, tried to take Leiva-Aldana's wallet and took Morales-Gamez's cell phone. The men, later identified as Ramirez and Russell, physically assaulted Leiva-Aldana and Morales-Gamez; during the assault, Morales-Gamez was hit in the head with a hard metal object. Morales-Gamez fought back with a small knife and the attackers fled. Leiva-Aldana and Morales-Gamez reported the incident to the police.
¶ 4 After reporting the incident to police, Leiva-Aldana and Morales-Gamez walked home in the early morning hours of October 25. As they approached their home, they were again accosted and assaulted by two men, later identified as Russell and Galeana Ramirez. During this second assault, the attackers shot Leiva-Aldana in the stomach and shrapnel from a bullet hit Morales-Gamez in the foot.
¶ 5 Officers discovered a cell phone at the scene of the October 24 robbery incident. Detective Dave Cox sent the cell phone to the Computer Crime Institute at Dixie State University in order for them to perform a "chip-off" procedure. Verbatim Report of Proceedings (VRP) (June 30, 2016) at 19. Chip-off forensics is a high-tech method of extracting and analyzing data stored on flash memory chips. This method often allows the extraction of data from devices even if the device is damaged or the data has been deleted. See VRP (June 30, 2016) at 26. Detective Cox later received the cell phone back with hundreds of pages of data extracted from the cell phone.
II. PROCEDURE
A. CHARGES
¶ 6 Based solely on the October 24 incident, the State charged Russell with first degree robbery of Morales-Gamez (count I), attempted first degree robbery of Leiva-Aldana (count II), fourth degree assault of Morales-Gamez (count V), and fourth degree assault of Leiva-Aldana (count VI). Based on the October 25 incident, the State charged Russell with first degree assault of Leiva-Aldana (count III) and first degree assault of Morales-Gamez (count IV). The first degree robbery, attempted first degree robbery, and the two first degree assaults included firearm sentencing enhancements.
*457 ¶ 7 Based solely on the October 24 incident, the State charged Ramirez with first degree robbery of Morales-Gamez (count I), attempted first degree robbery of Leiva-Aldana (count II); fourth degree assault of Morales-Gamez (count III), and fourth degree assault of Leiva-Aldana (count IV). Based solely on the October 25 incident, the State charged Galeana Ramirez with first degree assault of Leiva-Aldana (count 1) and first degree assault of Morales-Gamez (count II).
B. PRETRIAL MOTION TO ADMIT CELL PHONE TESTING RESULTS
¶ 8 Before trial, the parties learned that William Matthews, the technician who performed the chip-off data extraction from the cell phone found at the scene of the robbery, could not be located for trial. The State sought to admit the data extraction results by laying a foundation with Joan Runs Through, the assistant director of the Computer Crime Institute.
¶ 9 At the hearing on this matter, Runs Through admitted that she did not extract the data and that her testimony relied entirely on the report of testing done by Matthews. Runs Through testified generally about the type of data Matthews could have extracted from the cell phone, which included text and short message service messages, pictures, internet activity, and calendar information. Runs through also testified that she was familiar with the chip-off process and that she had taught the process to other technicians at the university. Specifically, she testified that there is nothing that the technician or an examiner can do to change data on the chip. Runs Through further testified that she looked through the extracted cell phone information and that the process had worked correctly.
¶ 10 Defense counsel objected to Runs Through's testimony and argued that the cell phone evidence should be excluded unless Matthews testified. The trial court disagreed and ruled that Runs Through could testify about the chip-off process.
C. TRIAL TESTIMONY-CELL PHONE
¶ 11 At trial, Runs Through testified extensively about the chip-off process and the preparation of the resulting report. She did not testify about the content of the cell phone found at the scene of the robbery. The trial court admitted portions of the report. Based on the report exhibits, Detective Cox testified about the data extracted from the phone that allowed him to connect the cell phone with Russell and then to connect Russell to Ramirez. Detective Cox also testified that the data extracted from the cell phone included text messages from Russell to Ramirez inviting Ramirez to go out for a beer at 7:00 PM on the night of October 24.
¶ 12 A jury convicted Russell, Ramirez, and Galeana Ramirez as charged. Russell, Ramirez, and Galeana Ramirez appeal their convictions, and Russell appeals an error in his judgment and sentence.[2]
ANALYSIS
¶ 13 The appellants argue that the trial court violated their rights of confrontation when it admitted the cell phone data extraction report when they had no opportunity to cross-examine Matthews. The appellants contend that allowing them to question Runs Through as a surrogate witness for Matthews was not sufficient to protect their rights to confrontation because Runs Through was not involved in the testing. We hold that because the cell phone data extraction report did not inculpate the appellants, Matthews was not a "witness against" the appellants, and their confrontation rights were not implicated.
A. LEGAL PRINCIPLES
¶ 14 A criminal defendant has the right to confront "the witnesses against him." U.S. CONST . amend. VI ; WASH. CONST . art. I, § 22 (confrontation clause). The confrontation clause applies when a witness is unavailable at trial. State v. Price , 158 Wash.2d 630, 639, 146 P.3d 1183 (2006). We review confrontation *458 clause claims de novo. State v. Jasper , 174 Wash.2d 96, 108, 271 P.3d 876 (2012).
¶ 15 We apply a two-part test to determine whether the lack of testimony from a witness who assisted in the preparation of forensic evidence testing implicates the confrontation clause. State v. Lui , 179 Wash.2d 457, 470-71, 315 P.3d 493 (2014). In Lui , our Supreme Court held that an expert's testimony comes within the scope of the confrontation clause only if (1) the person is a " 'witness' by virtue of making a statement of fact to the tribunal" and (2) the person is a witness " 'against' the defendant by making a statement that tends to inculpate the accused." 179 Wash.2d at 462, 315 P.3d 493. A "witness" is one who attests to facts; "against" indicates that those facts are adversarial in nature. Lui , 179 Wash.2d at 480, 315 P.3d 493. This two-part test "allows expert witnesses to rely on technical data prepared by others when reaching their own conclusions , without requiring each laboratory technician to take the witness stand." Lui , 179 Wash.2d at 483, 315 P.3d 493 (emphasis added).
¶ 16 To be a "witness" for the purpose of the confrontation clause, the expert must impart factual information to the court. Lui , 179 Wash.2d at 480, 315 P.3d 493. "This definition does not sweep in analysts whose only role is to operate a machine or add a reagent to a mixture." Lui , 179 Wash.2d at 480, 315 P.3d 493. "[M]erely laying hands on evidence ... does not a 'witness' make." Lui , 179 Wash.2d at 481, 315 P.3d 493.
¶ 17 Even if a witness imparts facts to the court, the witness is not a witness "against" the defendant unless those facts are adversarial in nature and have "some capacity to inculpate the defendant." Lui , 179 Wash.2d at 480-81, 315 P.3d 493. In Lui , our Supreme Court held that an expert was a witness when she ran a test and created a deoxyribonucleic acid (DNA) profile but that the expert only became a witness against the defendant once she compared the test DNA profile to the defendant's DNA profile. Lui , 179 Wash.2d at 488-89, 315 P.3d 493. The necessary inculpatory element was present only at the comparison stage because the data that the expert used did not itself inculpate anyone and did not have any meaning to a nonexpert. Lui , 179 Wash.2d at 488, 315 P.3d 493.
B. WITNESS
¶ 18 As in Lui , there is no question that Russell and Ramirez "confronted the State's witnesses 'face to face.' " 179 Wash.2d at 469, 315 P.3d 493. The question here "is whether the State presented the correct witness." Lui , 179 Wash.2d at 469, 315 P.3d 493. To answer this question, we must address whether Matthews was a "witness" for purposes of the confrontation clause. Russell and Ramirez argue that Matthews was a "witness" because Matthew's report is a statement of fact to the tribunal. We agree.
¶ 19 In Lui , our Supreme Court concluded that a doctor who took a murder victim's body temperature readings was "a 'witness' by virtue of recording the temperatures, thus creating factual information for later use by the court." 179 Wash.2d at 493, 315 P.3d 493. Similarly, here Matthews ran a test that created factual information for later use by the court. And, although he did not testify, his report was used as the basis for two other witnesses' testimony, Runs Through and Detective Cox. Thus, we hold that Matthews was a "witness" in this case.
C. WITNESS AGAINST A DEFENDANT
¶ 20 We next determine whether Matthews was a witness against Russell and Ramirez. To make this determination, we examine whether Matthews's cell phone data extraction report was inculpatory. Lui , 179 Wash.2d at 462, 315 P.3d 493.
¶ 21 In Lui , our Supreme Court held that the raw data of the DNA test was not inculpatory because the data that the testifying expert used did not have any meaning to a nonexpert. Lui , 179 Wash.2d at 488, 315 P.3d 493. "The necessary inculpatory element" did not arise until an expert compared the DNA profiles and gave meaning to the data. Lui , 179 Wash.2d at 488, 315 P.3d 493. The facts are similar here.
*459 ¶ 22 Here, Matthews performed the chip-off and ran a program that extracted the cell phone data from the chip recovered from the cell phone found at the scene of the robbery. Although the report contained data such as email addresses, text communications, and Galeana Ramirez's contact information, and likely had more meaning to a nonexpert than raw DNA data, the key inculpatory aspect of the data here was the connection between Russell and Ramirez on October 24. The connection between Russell and Ramirez on October 24 was explained during Detective Cox's testimony, not by the report itself. Matthews merely ran a program that extracted data from the chip.
¶ 23 This case is similar to Lui in that the person who ran the test made no comparison or conclusions from the extraction of the data. Therefore, we hold that Matthews's cell phone data extraction report was not inculpatory or testimonial and the report did not implicate Russell and Ramirez's confrontation rights; thus, the trial court did not violate Russell's and Ramirez's confrontation rights by not requiring Matthews to testify.
¶ 24 Accordingly, we affirm the appellants' convictions. But, as discussed in the unpublished portion of this opinion, we remand to correct the scrivener's error in Russell's judgment and sentence.
¶ 25 A majority of the panel having determined that only the foregoing portion of the opinion will be printed in the Washington Appellate Reporters and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is ordered.
We concur:
Maxa, C.J.
Lanese, J.P.T.

The appellants also request that we not impose appellate costs due to their indigency. Because the State has not yet requested costs, we decline to decide this issue. If the State elects to file a cost bill and the appellants object, a commissioner of this court will consider the request under RAP 14.2.

We set out additional facts related to the issues raised in the unpublished portion of this opinion below.