# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 84247-1-I |
| v. | UNPUBLISHED OPINION |
| SAMANTHA HALL-HAUGHT, | |
| Appellant. | |

DWYER, J. — Samantha Hall-Haught appeals from the judgment entered on a jury's verdict finding her guilty of vehicular assault. On appeal, she contends that she was deprived of her constitutional right to confront the witnesses against her when lab results indicating THC[1] in her system were admitted into evidence without the testimony of the technician who performed the test. Because the supervisor who testified and was available for cross-examination had independently reviewed the testing and the results and testified to her own opinions about them, we conclude that Hall-Haught's confrontation rights were not violated. The claims of error in Hall-Haught's statement of additional grounds are also without merit. Accordingly, we affirm Hall-Haught's conviction.

Hall-Haught further contends that the trial court conducted an inadequate inquiry into her ability to pay before imposing a crime lab fee and a criminal filing

---

[1] Tetrahydrocannabinol.

fee, and that a victim penalty assessment and DNA[2] collection fee should be stricken in light of recent statutory amendments. We agree that the DNA fee is no longer permitted and that the sentencing court's inquiry was insufficient with respect to the remaining fees and the penalty assessment. We therefore remand for the court to strike the DNA fee and to perform an individualized inquiry into Hall-Haught's ability to pay before imposing the criminal filing fee, crime lab fee, and victim penalty assessment.

I

On September 12, 2019, Samantha Hall-Haught's car collided with Kyra Hall's car as they each came around a curve on Camano Island. At the collision site, police found cannabis paraphernalia strewn from Hall-Haught's car, including packaging and a pipe. Hall and Hall-Haught were both taken to the hospital, where a police officer observed Hall-Haught as having bloodshot and watery eyes with dilated pupils. The officer then obtained a search warrant to test Hall-Haught's blood. A blood test was performed at the Washington State Toxicology Laboratory, and resulted in a finding that Hall-Haught had $1.5\pm0.40$ nanograms/milliliter of THC in her blood.

The State charged Hall-Haught with vehicular assault, on the grounds that she drove or operated a vehicle either (1) in a reckless manner, (2) while under the influence of a drug, or (3) with disregard for the safety of others. The case proceeded to a jury trial. At trial, the State called Katie Harris, a supervisor with the Washington State Toxicology Lab, to testify to the results of the blood test.

---

[2] Deoxyribonucleic acid.

Hall-Haught objected to Harris's testimony on the grounds that Harris was not the technician who conducted the blood test, and that introducing the results without the testimony of that technician violated Hall-Haught's right to confront the witnesses against her. The trial court overruled the objection, and the lab results were admitted into evidence.

The jury found Hall-Haught guilty of vehicular assault, but was not unanimous as to the means by which the crime was committed. Hall-Haught was sentenced to one month in jail. The sentencing court had the following exchange with Hall-Haught about her ability to pay legal fees and fines:

> [THE COURT:] Do you have any idea whether you will be able to resume your job when you get back [from confinement]?
> SAMANTHA HALL-HAUGHT: I don't know they're set in stone about it. I did let them know what could happen. And they told me that I can miss up to four weeks. But I wasn't sure if that was because they gave me a FLMA paper to fill out. So I don't know if they are going to allow to do that because I didn't get a paper filled out because the doctor wouldn't fill it out for me to miss four weeks.
> THE COURT: Okay. So let's try it this way. Are there any unusual bills or debts that you owe right now?
> SAMANTHA HALL-HAUGHT: I do.
> THE COURT: What is that?
> SAMANTHA HALL-HAUGHT: I owe rent and PUD.
> THE COURT: Okay. And I probably said it in a way that was confusing. I understand that you owe obligations. So does every person in this Court. Any unusual kinds of debts or obligations? Things that maybe most people don't have that you've got?
> SAMANTHA HALL-HAUGHT: Not that I'm aware of.
> THE COURT: Okay. The Court is not making a finding of indigency.

3

The sentencing court imposed a $500 victim penalty assessment, a $200 criminal filing fee, a $100 crime lab fee, and a $100 DNA collection fee.

Hall-Haught appeals.

II

Hall-Haught first asserts that the trial court violated her constitutional right to confront the witnesses against her by admitting testimony regarding the blood test results without presenting the lab technician who performed the test for cross-examination. We disagree. In Washington, expert witnesses may testify to their own conclusions, even when they rely on data prepared by nontestifying technicians. State v. Lui, 179 Wn.2d 457, 483, 315 P.3d 493 (2014). Because Harris testified to her own independent conclusion, Hall-Haught's confrontation rights were not violated.

A criminal defendant has the right to confront "the witnesses against him." U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "We apply a two-part test to determine whether the lack of testimony from a witness who assisted in the preparation of forensic evidence testing implicates the confrontation clause." State v. Galeana Ramirez, 7 Wn. App. 2d 277, 283, 432 P.3d 454 (2019). An individual's statements come within the scope of the confrontation clause only if, first, the person is "a 'witness' by virtue of making a statement of fact to the tribunal, and second, the person [is] a witness 'against' the defendant by making a statement that tends to inculpate the accused." Lui, 179 Wn.2d at 462. "Even if a witness imparts facts to the court, the witness is not a witness 'against' the defendant unless those facts are adversarial in nature and have 'some capacity

4

to inculpate the defendant.'" Galeana Ramirez, 7 Wn. App. 2d at 284 (quoting Lui, 179 Wn.2d at 480-81).

This test does not permit "a laboratory supervisor to parrot the conclusions of his or her subordinates"; instead, it permits "expert witnesses to rely on technical data prepared by others when reaching their own conclusions, without requiring each laboratory technician to take the witness stand." Lui, 179 Wn.2d at 483. While the testimony of technicians "may be *desirable*, . . . the question is whether it is constitutionally *required*." Lui, 179 Wn.2d at 480. "[A] break in the chain of custody might detract from the credibility of an expert analysis of some piece of evidence, [but] this break in the chain does not violate the confrontation clause." Lui, 179 Wn.2d at 479. Thus, only the "ultimate expert analysis, and not the lab work that leads into that analysis," is subject to the confrontation clause requirement. Lui, 179 Wn.2d at 490.

This distinction is perhaps most clear in the context of DNA testing, wherein a lab technician may produce an allele table, a collection of numbers that does not "have any particular meaning to a nonexpert." Lui, 179 Wn.2d at 488. In such a case, an expert witness is necessary to "explain what the numbers represent[ ] . . . and why they [are] significant." Lui, 179 Wn.2d at 488. This analysis, unlike the allele table itself, is potentially inculpatory to the defendant, and therefore only the expert witness is conducting the ultimate analysis that implicates the confrontation clause. In the context of drug screening, in which a lab technician's result may have more easily understood and potentially inculpatory meaning, additional care in our analysis is required.

In City of Seattle v. Wiggins, a forensic scientist performed a toxicology analysis of the defendant's blood, determined his blood alcohol content, and prepared a final report of her results. 23 Wn. App. 2d 401, 404, 515 P.3d 1029 (2022). The City sought to admit the scientist's report through the testimony of a supervisor who had signed the report as the "reviewer." Wiggins, 23 Wn. App. 2d at 404. We upheld the exclusion of the supervisor's testimony, noting unchallenged findings that the supervisor was not present during the testing and did not give additional meaning to the raw data, and thus concluding that the supervisor's "own testimony demonstrates that he did not engage in the sort of independent inquiry required by the case law in order to permit his testimony as the inculpatory witness against Wiggins." Wiggins, 23 Wn. App. 2d at 410-11.

Here, as in Wiggins, Harris testified that she was a supervisor and had reviewed the report prepared by a different forensic scientist, rather than being present during the testing. However, unlike in Wiggins, Harris specifically testified that she "came to [her] own independent conclusion" following her review of all the data in the file. Thus, Harris was not merely "parrot[ing] the conclusions" of her subordinates, which is not permitted by the confrontation clause. Lui, 179 Wn.2d at 483. Instead, she was "rely[ing] on technical data prepared by others when reaching [her] own conclusions," which is permitted without the testimony of each analyst. Lui, 179 Wn.2d at 483.

In Wiggins, the court noted that "[t]he BAC number attributed to Wiggins's blood is the inculpatory statement against him," and that therefore the technician who reached that number was required to testify. 23 Wn. App. 2d at 413. Here,

6

the number establishing the THC concentration in Hall-Haught's blood was independently reached by both the lab technician and Harris. However, Harris only testified to her own conclusion about that number:

> Q: And based on your review of the file in – in this case, did it appear that the extraction and the testing protocols for the quantitative tests were done correctly?
> A: Yes.
> . . . .
> Q: And based on that review, what were the values for THC and carboxy THC that were found in the quantitative test?
> A: THC the value is 1.5 nanograms per mil and for carboxy THC, it was 14 nanograms per mil.

Because Harris only testified to her conclusion, and not the lab technician's, her testimony does not violate the confrontation clause. We affirm Hall-Haught's conviction.

III

Hall-Haught next asserts that several legal financial obligations (LFOs) should be stricken. She contends that the trial court conducted an inadequate inquiry into her ability to pay before imposing the criminal filing fee and crime lab fee, and that the DNA fee and victim penalty assessment should be stricken based on recent statutory amendments. We agree that the court's inquiry was insufficient and that the DNA fee must be stricken on remand.[3]

Former RCW 10.01.160(3) (2018) provides that a court shall not order an indigent defendant to pay costs. To make this determination, the sentencing

---

[3] Hall-Haught did not raise this issue below. However, because of the problems LFOs impose on indigent defendants, we "regularly exercise [our] discretion to reach the merits of unpreserved LFO arguments." State v. Glover, 4 Wn. App. 2d 690, 693, 423 P.3d 290 (2018). We do so here.

court must make an individualized inquiry on the record into a defendant's "(1) employment history, (2) income, (3) assets and other financial resources, (4) monthly living expenses, and (5) other debts." State v. Ramirez, 191 Wn.2d 732, 744, 426 P.3d 714 (2018). "If the trial court fails to conduct an individualized inquiry into the defendant's financial circumstances, as RCW 10.01.160(3) requires, and nonetheless imposes discretionary LFOs on the defendant, the trial court has per se abused its discretionary power." Ramirez, 191 Wn.2d at 741. We review de novo whether the court performed an adequate inquiry into the defendant's ability to pay. Ramirez, 191 Wn.2d at 741-42.

Here, the court asked Hall-Haught only two questions regarding her ability to pay—whether she expected to keep her job following incarceration, and whether she had any "unusual bills or debts." This was not an adequate inquiry. The court failed to perform the mandatory inquiry into "the defendant's income, as well as the defendant's assets and other financial resources" and "the defendant's monthly expenses." Ramirez, 191 Wn.2d at 744. We therefore remand for the court to perform this inquiry before imposing the criminal filing fee and the crime lab fee.[4]

Hall-Haught also contends that the victim penalty assessment (VPA) and DNA collection fee should be stricken based on recent statutory amendments.[5] The victim penalty assessment was recently addressed in State v. Ellis, No.

---

[4] See RCW 36.18.020(2)(h) (the criminal filing fee "shall not be imposed on a defendant who is indigent"); RCW 43.43.690(1) (the crime lab fee may be suspended if "the person does not have the ability to pay the fee").

[5] Hall-Haught also contends that the trial court's imposition of the victim penalty assessment violated the constitutional excessive fines clause. Because of the statutory amendment, we need not address this issue.

56984-1-II, slip op. at 12 (Wash. Ct. App. June 13, 2023),

https://www.courts.wa.gov/opinions/pdf/D2%2056984-1-II%20Published%20Opinion.pdf.  There, Division Two of this court recognized:

> In the 2023 session, the legislature passed Engrossed Substitute House Bill 1169.  LAWS OF 2023, ch. 449.  ESHB 1169 added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3).  LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4).  The amended statute also requires trial courts to waive any VPA imposed prior to the effective date of the amendment if the offender is indigent, on the offender's motion.  LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(5)(b).  This amendment will take effect on July 1, 2023.  LAWS OF 2023, ch. 449.

Ellis, slip op. at 12.  Although the amendment did not take effect until after Hall-Haught's sentencing, it applies to her case because this matter is on direct appeal.  Ellis, slip op. at 12.  Thus, if the court determines on remand that Hall-Haught is indigent, the court must strike the victim penalty assessment on remand pursuant to RCW 7.68.035(4).

In the same act, the legislature amended the statute governing the DNA collection fee to eliminate the fee for all defendants.  LAWS OF 2023, ch. 449, § 4.  This amendment also took effect on July 1, 2023.  Thus, the court must strike the DNA fee on remand.

IV

Hall-Haught's pro se statement of additional grounds notes that only one police officer smelled cannabis at the collision, claims that she was not intoxicated, suggests that Hall's blood should have been tested, and says she feels her attorney did not fight for her.  Because the statement does not refer to

specific errors in the course of her prosecution, it raises no reviewable issues. RAP 10.10(c) ("[T]he appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors.").

We affirm Hall-Haught's conviction. We remand for the trial court to strike the DNA fee and to reconsider its imposition of the criminal filing fee, crime lab fee, and victim penalty assessment after performing an individualized inquiry into Hall-Haught's ability to pay.

Affirmed in part, reversed in part, and remanded.

Dwyer, J.

WE CONCUR:

Feldman, J.          Coburn, J.