# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>STEVEN NICOLAS RUSSELL,<br><br>                Petitioner. | No. 54684-1-II<br><br>UNPUBLISHED OPINION |

VELJACIC, A.C.J. — A jury found Steven N. Russell guilty of robbery in the first degree, attempted robbery in the first degree, two counts of assault in the first degree, and two counts of assault in the fourth degree. In this timely personal restraint petition (PRP), Russell alleges (1) ineffective assistance of counsel, (2) his offender score was miscalculated, (3) evidence was wrongly destroyed, (4) evidence from a cell phone recovered at one of the crime scenes should have been excluded because the search of the cell phone violated Washington's Privacy Act and was not supported by a lawful search warrant, (5) prosecutorial misconduct, (6) sufficient evidence does not support his convictions, and (7) cumulative error deprived him of a fair trial. We deny Russell's PRP in part, grant his PRP in part, and remand to the trial court to resentence Russell based on a corrected offender score.

FACTS

I.    BACKGROUND FACTS[1]

This matter involves two related incidents that occurred on the night of October 24, 2015, and the early morning of October 25, 2015.

Jose Leiva Aldana and Agustin Morales Gamez were walking home on the night of October 24, when they were accosted by two men. The men demanded money, tried to take Leiva Aldana's wallet, and took Morales Gamez's cell phone. The men, later identified as Alejandro Ramirez and Russell, assaulted Leiva Aldana and Morales Gamez. During the assault, Morales Gamez was hit in the head with a hard metal object. Morales Gamez fought back with a small knife and the attackers fled. Leiva Aldana and Morales Gamez reported the incident to the police. Police located a broken cell phone at the scene.

After reporting the incident to police, Leiva Aldana and Morales Gamez walked home in the early morning hours of October 25. As they approached their home, they were again assaulted by two men, later identified as Russell and Daniel Galeana Ramirez. During this second assault, the attackers shot Leiva Aldana in the stomach and shrapnel from a bullet hit Morales Gamez in the foot.

II.    PROCEDURE BELOW

A.    Charges

Based on the October 24 incident, the State charged Russell with robbery in the first degree of Morales Gamez, attempted robbery in the first degree of Leiva Aldana, assault in the fourth degree of Morales Gamez, and assault in the fourth degree assault of Leiva Aldana. Based on the

---

[1] The background facts rely primarily on the facts set forth in Russell's direct appeal, which was consolidated with *State v. Ramirez* and *State v. Galeana Ramirez*. *State v. Ramirez*, 7 Wn. App. 2d 277, 432 P.3d 454 (2019).

October 25 incident, the State charged Russell with assault in the first degree of Leiva Aldana and assault in the first degree assault of Morales Gamez. The State had also charged Russell with unlawful possession of a firearm, but the State dismissed that charge because there was no evidence linking Russell to a firearm.

B.     Pretrial Proceedings

Before trial, the gun that was used during the October 25 assault was destroyed. The gun belonged to a Rigoberto Rivera Solorio and was destroyed pursuant to a forfeiture order on another criminal matter.

Also prior to trial, the State filed a motion in limine regarding the admissibility of a data report extracted from the broken cell phone located at the scene of the October 24 incident. The data report was compiled from a "chip-off" procedure, where technicians at the Computer Crime Institute at Dixie State University (now known as Utah Tech University) remove the microchip inside the phone and then extract data from it. Rep. of Proc. (RP) (June 22, 2016) at 39.

At a hearing on the State's motion, the State informed the trial court that William Matthews, the technician who performed the chip off procedure on the cell phone in question, no longer worked for the Computer Crime Institute and could not be located for trial. The State proposed having Joan Runs Through, the assistant director of the Computer Crimes Institute, testify instead. Runs Through testified at the hearing about the chip off process generally, as she was familiar with the process and taught the process to other technicians at the university. Defense counsel objected to Runs Through's testimony. The court ruled that Runs Through could testify about the chip off procedure that compiled the cell phone data report.

C.        Voir Dire

Prior to voir dire, Russell walked past the jury room on his way to the courtroom accompanied by jail staff. It is unclear if the jury panel saw him. Counsel for one of Russell's co-defendants moved for a new jury panel. The trial court denied his request.

During voir dire, defense counsel asked the jury, "Based on what I've asked you today and the contributions you all made, and I appreciate all of them, is there anything that you wish I had asked that you wanted to get through to me?" RP (June 28, 2016) (*State v. Russell*, No. 49245-8-II) at 186. One of the jurors suggested the question, "[I]f there's anybody in here that's not going to give a fair trial to the gentlemen sitting there because of their ethnicity?" RP (June 28, 2016) (*State v. Russell*, No. 49245-8-II) at 186. Defense counsel agreed it was a good question and asked the potential jurors if anyone felt that way. Only one potential juror responded, saying that "was kind of already said." RP (June 28, 2016) (*State v. Russell*, No. 49245-8-II) at 187. Counsel responded, "[f]air enough" and moved on. RP (June 28, 2016) (*State v. Russell*, No. 49245-8-II) at 187. The race or ethnicity of the prospective jurors, including the possibility of any jurors being Native American, is not shown in our record.

D.        Trial

1.        Eye-Witness Identification Testimony

Detective Jason Perkinson testified that while he was working security at a local hospital, he witnessed three men on a security camera entering the emergency room lobby. He learned one man was being treated for a stab wound. At trial, he identified Russell as one of the individuals who helped Ramirez, the injured person, into the hospital. He further testified that Russell and Galeana Ramirez returned to the hospital a short time later and then left again. Officer Cody Blodgett also testified that he saw Russell at the hospital with Ramirez and Galeana Ramirez.

Detective Dave Cox, one of the investigating officers, was able to obtain a video from a nearby fire department. The video showed two men attacking Morales Gamez and Leiva Aldana on October 24. It also showed two witnesses, Nicole Smith and Aaron Johnson, coming out of their house.

Smith testified that she identified Russell as one of the assailants from a photo lineup. She also identified him in the courtroom. In her statement to police, she described Russell as the larger assailant and as "white." RP (June 29, 2016) (*State v. Ramirez*, No. 49245-8-II) at 31. Russell is Native American.

Johnson also testified that he observed the two attackers, with one of the attackers being larger. He also identified Russell in a photo lineup and at trial. At trial, Johnson also testified that when he witnessed the event the victims and suspects all appeared Hispanic.

After Johnson testified, one of the jurors indicated to the bailiff that she recognized Johnson as a prior student in a class that she taught at a correction center. When questioned whether she could still be fair and impartial, the juror answered she believed so. There were no motions by either of the parties and the trial proceeded.

Cox testified that he instructed Officer Jon Hudson to compile a photo montage that included Russell's picture. Cox testified that this was "based on the investigation up to this point with the information I had involving [Galeana Ramirez] being at the hospital, along with . . . Ramirez and . . . Russell and the description of a larger male being at the scene of the robbery." 2 RP (July 1, 2016) at 326-27.

Hudson testified that, as instructed by Cox, he put together the photo montage with six pictures—one was of Russell and the five others were individuals who looked like Russell. When

5

asked if he knew of an eyewitness describing the larger assailant as white, Hudson stated no, but he heard there was a disparity in the suspect's description.

Hudson further testified that when showing a photo montage, he instructs the witnesses that "because an officer is showing you a group of photographs, this should not influence your judgment in any way" and that "[t]he person who committed the crime may or may not be in this group of photographs." 2 RP (July 1, 2016) at 275. He further instructs the witnesses that "[i]t is just as important to eliminate innocent persons as it is . . . to identify those persons responsible" and that the witness is "in no way obligated to identify anyone." 2 RP (July 1, 2016) at 275. Hudson also instructs the witnesses to study the photographs "carefully before making any comments, consider that the photographs could be old or new, that the hairstyles change, and that the persons can alter their appearance or going—or shaving facial hair." 2 RP (July 1, 2016) at 275.

Leiva Aldana's testimony vacillated between saying that the attackers were Hispanic, and saying that they were fair-skinned white men. Cox testified that he showed a photo montage to Leiva Aldana in the hospital to identify the person who shot him. Leiva Aldana selected Galeana Ramirez as the shooter. Cox also testified that Leiva Aldana then selected Russell from a separate montage as the other attacker.

Morales Gamez told officers that he thought that both men who attacked him were white and blonde but later clarified that the bigger man had black hair.

2.      Cell Phone Testimony

During trial, Runs Through testified extensively about the chip off process and the preparation of the report listing the results of the testing. She did not testify about the contents of the cell phone.

Cox testified that he received the cell phone data report. He discovered that the e-mail addresses "snrussell.89@gmail.com" and "snrussell030489@gmail.com" appeared on the phone, associated with the calendar application. 2 RP (July 1, 2016) at 358. Cox testified that Russell's birth date is March 4, 1989, which corresponded with the numbers of the e-mail addresses. Cox also testified that the instant messages extracted from the phone had the name "Steven Russell" associated with them. 2 RP (July 1, 2016) at 378. From these clues, he concluded that the phone belonged to Russell.

Cox also testified regarding the records of the communications extracted from the phone. Cox testified that he saw messages from a contact named "Silent" from the night of the first incident. 2 RP (July 1, 2016) at 382. Cox explained that he researched the number associated with "Silent" in a police database and discovered that the number was affiliated with Ramirez. Cox also testified that he learned Ramirez had the word "Silent" tattooed on his right upper arm. Cox testified that the messages appeared to be an invitation sent by Russell to Ramirez to come drink a beer at about 7:00 p.m. on the date of the first incident.

3.      Firearm Evidence

Officer Jason Capps testified that he obtained a .38 revolver from a person named Josiah Rhodes. Rhodes asked Capps to take the weapon. Capps took the weapon and subsequently cited Rivera Solorio for unlawfully possessing it.

Cox found out about the .38 revolver and believed that it was the same .38 revolver that was used in the October 25 shooting because he was aware that Rivera Solorio and Galeana Ramirez were acquainted. Cox sent the revolver to the Washington State Patrol (WSP) Crime laboratory, along with a bullet that had been recovered from the scene of the shooting.

7

The WSP laboratory examiner who tested the .38 revolver and the bullet also testified. He concluded that the recovered bullet was fired from the .38 revolver. A photograph of the gun was admitted at trial.

E.    Motion to Dismiss

After the State rested its case, Russell moved to dismiss the charges "for lack of identification and all the inconsistencies how he was described." 3 RP (July 6, 2016) at 506. The trial court denied the motion based on the eyewitness identification in court and the video evidence.

F.    Closing Remarks

During closing arguments, defense counsel highlighted the eyewitnesses' conflicting testimony about the description of the suspects. Counsel argued that Smith "described two guys, a bigger guy, white guy, a bigger guy wearing a black hoodie and tan pants." 4 RP (July 7, 2016) at 709. Then counsel argued that Johnson also claimed Russell was a white guy. Counsel then stated that Morales Gamez described Russell as a "white guy with the blond hair, the bushy blond mustache, light colored eyes." 4 RP (July 7, 2016) at 711. Finally, counsel argues that Leiva Aldana described the "bigger guy" was the one with "blonde hair . . . white guy." 4 RP (July 7, 2016) at 712. Counsel then argued that the witnesses' testimonies show "reasonable doubts." 4 RP (July 7, 2016) at 714.

G.    Verdict and Sentencing

The jury found Russell guilty of robbery in the first degree of Morales Gamez, attempted robbery in the first degree of Leiva Aldana, assault in the fourth degree of Morales Gamez, and assault in the fourth degree of Leiva Aldana, all for the incidents on October 24. For the incidents on October 25, the jury found Russell guilty of assault in the first degree of Leiva Aldana and

assault in the first degree of Morales Gamez. The robbery in the first degree and the attempted robbery in the first degree included firearm sentencing enhancements.

Russell's offender score included a 2010 conviction for possession of a controlled substance. The trial court calculated Russell's offender score as a 9 for his most serious offense, assault in the first degree, which carried the longest standard range of his convictions—240-318 months. The court imposed the low end of the standard range for the assault conviction, with a total sentence, including firearm enhancements, of 456 months.

III.     PROCEDURE ON APPEAL

Russell appealed his convictions. *See State v. Ramirez*, 7 Wn. App. 2d 277, 282, 432 P.3d 454 (2019). He argued that the trial court erred in allowing the cell phone data report because he did not have an opportunity to cross-examine Matthews. *Id.* at 283. We held that the trial court did not err in admitting the evidence because the cell phone data report was not inculpatory; therefore, Matthews was not a witness against Russell so his confrontation rights were not implicated. *Id.* at 285-86.

In the unpublished portion of our opinion, we held that the trial court did not err in joining Russell's, Ramirez's, and Galeana Ramirez's cases and denying a later motion to sever. *Ramirez*, No. 49245-8-II, slip op. at 15, 22-23. We also held that Russell was not denied his right to a unanimous verdict. *Id.* at 23-24. We further held that Russell's convictions for assault in the fourth degree did not merge with any of his other convictions, he was not denied his right to a fair trial when the jury pool saw him in the hallway, and the cumulative error doctrine did not apply. *Id.* at 32-38.

We affirmed Russell's convictions but remanded to the trial court to correct a scrivener's error on the judgment and sentence. *Id.* at 36-37.

Russell then filed this PRP.

ANALYSIS

Relief through a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before we will disturb an otherwise settled judgment. *In re Pers. Restraint of Hinton*, 1 Wn.3d 317, 324, 525 P.3d 156 (2023). To obtain collateral relief through a PRP, the petitioner must demonstrate both error and prejudice. *Id.* If the claimed error is of constitutional magnitude, the petitioner must show actual and substantial prejudice. *Id.* If the claimed error is not of constitutional magnitude, the petitioner must demonstrate that the error is a fundamental defect that inherently resulted in a complete miscarriage of justice. *Id.* The petitioner must state with particularity the factual allegations underlying his or her claim of unlawful restraint. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). Bare assertions and conclusory allegations are not sufficient. *Id.* at 886.

Petitioners seeking relief through a PRP cannot merely renew "'an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue.'" *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004)). Relitigation may serve the interests of justice if there has been an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the appeal exists. *Id.* But petitioners cannot avoid this requirement "merely by supporting a previous ground for relief with different factual allegations or with different legal arguments." *Davis*, 152 Wn.2d at 671. The petitioner must instead "raise new points of fact and law that were not or could not have been raised in" the prior action. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388-89, 972 P.2d 1250 (1999).

I.      INEFFECTIVE ASSISTANCE OF COUNSEL

Russell first argues that he was denied effective assistance of counsel when defense counsel (1) failed to move to suppress eyewitness identification evidence, (2) failed to call an expert witness on eyewitness identification reliability, and (3) failed to object to several jury matters. We disagree.

To establish ineffective assistance of counsel, Russell must demonstrate that (1) defense counsel's performance was deficient and (2) this deficient performance was prejudicial. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). If the petitioner fails to satisfy one prong of this two-part test, we need not consider the other prong. *Id*. at 847.

Performance is deficient when it falls below an objective standard of reasonableness. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). There is a strong presumption that counsel did not perform deficiently, but this presumption can be overcome where there is no conceivable legitimate tactic explaining counsel's performance. *Id*.

"Prejudice exists if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). A reasonable probability is one that is sufficient to undermine confidence in the trial's outcome, and it is a lower standard than a preponderance standard. *Id*. In the PRP context, a petitioner who successfully demonstrates prejudice in an ineffective assistance of counsel claim has necessarily shown actual and substantial prejudice sufficient to obtain collateral relief. *Crace*, 174 Wn.2d at 846-47.

A.      No Motion to Suppress Eyewitness Identification Evidence

Russell contends that he was denied effective assistance of counsel because defense counsel did not move to suppress the eyewitness identification evidence. He argues the photo montage was unnecessarily suggestive because the individuals did not depict the witnesses' descriptions of the suspects and was based on just a hunch. We disagree.

When ineffective assistance of counsel is premised on failure to make a motion, defendant must show that the motion likely would have been granted. *Davis*, 152 Wn.2d at 711.

"In 1977, the United States Supreme Court held that the due process clause of the Fourteenth Amendment compels exclusion of eyewitness identification evidence that (1) was obtained by an unnecessarily suggestive police procedure and (2) lacks reliability under the totality of circumstances." *State v. Derri*, 199 Wn.2d 658, 673-74, 511 P.3d 1267 (2022) (relying on *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)).

Challenging a police identification procedure requires a two-part analysis. *Derri*, 199 Wn.2d at 674. First, the defendant must establish by a preponderance of the evidence that the procedure used was unnecessarily suggestive. *Id.* "Generally, courts have found [out-of-court] lineups or montages to be impermissibly suggestive solely when the defendant is the only possible choice given the witness's earlier description." *State v. Ramires*, 109 Wn. App. 749, 761, 37 P.3d 343 (2002). If the defendant fails to show that the identification procedure was impermissibly suggestive, the inquiry ends. *Id.* If it was, the court then considers whether, under the totality of the circumstances, "the unnecessarily suggestive procedure created 'a very substantial likelihood of irreparable misidentification.'" *Derri*, 199 Wn.2d at 674 (internal quotation marks omitted) (quoting *Brathwaite*, 432 U.S. at 116).

Here, there was a disparity in the description of the suspects. While there was evidence the suspects were described as blonde and white, there was also evidence that the larger attacker was described as having black hair and was non-white. Cox specifically testified that Russell was added to the photo montage "based on the investigation up to this point with the information I had involving [Galeana] Ramirez being at the hospital, along with . . . Ramirez and . . . Russell and the description of a larger male being at the scene of the robbery." 2 RP (July 1, 1026) at 326-27. And when Russell moved for dismissal for lack of identification, the trial court denied the motion based, in part, on the video evidence.

The presence of disparity in identification is not unusual and does not demonstrate that the procedure was suggestive. We conclude that the photo montage was not unnecessarily suggestive. Therefore, we hold that it was unlikely a motion to suppress the eyewitness identifications would have been granted, which is required to show deficient performance.

Additionally, there is a conceivable trial tactic for not moving to exclude the eyewitness evidence. Defense counsel argued at the end of the State's case and in closing that there was a discrepancy between some of the witnesses' descriptions of Russell and his actual appearance. Counsel used this discrepancy to argue that Russell was innocent. It was reasonable for counsel to refrain from challenging the conflicting eyewitness testimony so as to ensure counsel could utilize this line of attack in closing argument, especially where the other evidence presented against Russell was less assailable. Because there is a conceivable legitimate tactic explaining counsel's performance, Russell does not overcome the strong presumption that counsel did not perform deficiently. *See Bertrand*, 3 Wn.3d 116 at 128. Given all, Russell fails to show counsel rendered defiant performance; therefore, his ineffective assistance of counsel claim fails.

13

B.    Failure to Call Eyewitness Expert

Russell next contends that he was denied effective assistance of counsel because defense counsel did not call an expert witness on eyewitness identification reliability. We disagree.

Ordinarily, the decision "to call a witness is a matter of legitimate trial tactics that presumptively does not support a claim of ineffective assistance of counsel." *State v. Davis*, 174 Wn. App. 623, 639, 300 P.3d 465 (2013). "A defendant can overcome this presumption by showing that counsel failed to adequately investigate or prepare for trial." *Id*.

Calling an expert witness to address the reliability of eyewitness identification would not have been necessary to allow Russell to argue the eyewitness identifications were unreliable. Russell fails to show that counsel failed to adequately investigate or prepare for trial. Russell does not overcome the strong presumption that counsel did not perform deficiently. *Bertrand*, 3 Wn.3d at 128. Additionally, Russell does not demonstrate a reasonable probability that calling an expert witness would have altered the trial's outcome, especially since defense counsel already challenged the eyewitness identifications before the jury, and they were not convinced. Accordingly, Russell's ineffective assistance of counsel claim fails.

C.    Failure to Object to Jury Matters

Russell next argues that he was denied effective assistance of counsel because defense counsel allowed a biased individual on the jury, did not oppose the striking of a potential juror for being Native American, and did not object to security measures viewed by the jury. We disagree.

First, Russell points to defense counsel allowing potential jurors to suggest questions during voir dire and not moving for a mistrial when one of the juror's recognized one of the witnesses to support his claims of ineffective assistance of counsel. But Russell fails to provide

14

more than conclusory statements. Moreover, Russell fails to show how the outcome of his trial would have been any different.

Next, our record does not show the striking of a potential juror for being Native American and we decline to address this issue further.

Last, there is no evidence that any of the potential jurors, let alone those selected to be on the jury, saw Russell walking in the hallway or whether he was shackled or not. This issue of whether Russell was denied a fair trial based on his walking by the jury room with jail staff has already been raised, and rejected, in Russell's pro se statement of additional grounds for review in his direct appeal. *See* Ramirez, No. 49245-8-II, slip op. at 37-38 ("there is nothing in the record demonstrating that any of the jurors saw the defendants in the hallway. And there is nothing in the record suggesting that any of the jurors were prejudiced by the incident.") Accordingly, we hold that Russell fails to establish ineffective assistance of defense counsel.

Russell next alleges appellate counsel provided ineffective assistance of counsel for not raising these issues in his direct appeal. As with a claim of ineffective assistance of trial counsel, a claim of ineffective assistance of appellate counsel requires the petitioner to show the merit of any legal issue appellate counsel failed to raise and also show that the petitioner was prejudiced. *In re Pers. Restraint of Salinas*, 189 Wn.2d 747, 760, 408 P.3d 344 (2018). Because Russell does not show there was a meritorious legal issue that appellate counsel failed to raise, Russell's ineffective assistance of appellate counsel claim fails.

II.    MISCALCULATED OFFENDER SCORE

Next, Russell contends that he is entitled to be resentenced because his offender score used at sentencing included a conviction for unlawful possession of a controlled substance invalidated

15

by *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). The State concedes. We agree with Russell and the State.

We initially note that this issue was raised by appellate counsel in counsel's supplemental brief, which was filed outside the one-year time limit to challenge a judgment and sentence under RCW 10.73.090. However, there is no time bar if a petitioner can show that (1) the judgment and sentence is facially invalid or not entered by a court of competent jurisdiction, or (2) an exception under RCW 10.73.100 applies. RCW 10.73.090(1)

A conviction based on a constitutionally invalid statute may not be considered when a sentencing court calculates an offender score. *State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). "A sentencing court acts without statutory authority . . . when it imposes a sentence based on a miscalculated offender score." *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997). Moreover, a miscalculated offender score that increases an offender's sentencing range results in a judgment and sentence that is facially invalid for purposes of exempting the PRP from the time limit. *In re Pers. Restraint of Richardson*, 200 Wn.2d 845, 847, 525 P.3d 939 (2022).

Here, removing from Russell's offender score his prior simple possession conviction reduces his offender score from 9 to 8, thereby reducing Russell's standard range from 240-318 months to 209-277 months. *See* RCW 9.94A.510. Therefore, this issue is not time barred based on the facial invalidity exception.

The adequate remedy for when an offender score includes a conviction based on an unconstitutional statute is resentencing with the correct offender score. *State v. Markovich*, 19 Wn. App. 2d 157, 173, 492 P.3d 206 (2021). Accordingly, we accept the State's concession that Russell must be resentenced, and remand to the trial court to strike his simple possession

conviction, recalculate Russell's offender score, and resentence Russel with the correct offender score.[2]

### III. DESTRUCTION OF FIREARM

Russell next argues that he was denied his right to present a defense because the State failed to preserve the firearm used during the October 25 incident. We disagree.

The State has a duty to preserve and disclose exculpatory evidence. *State v. Wittenbarger*, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). But this is not "'an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *Id.* (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)) The State's duty extends only to material exculpatory evidence and to potentially useful evidence destroyed in bad faith by the State. *Id.* Material exculpatory evidence must possess "an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* Whether the State acted in bad faith depends on its knowledge of the exculpatory value of the evidence when it was destroyed. *State v. Koeller*, 15 Wn. App. 2d 245, 252, 477 P.3d 61 (2020). Under RCW 9.41.098, courts may order forfeiture of a firearm.

Here, Capps obtained a .38 revolver and cited Rivera Solorio for unlawfully possessing it. Cox found out about the .38 revolver and believed that it was the same .38 revolver that was used in the October 25 shooting, because he was aware that Rivera Solorio and Galeana Ramirez were acquainted. He was also aware that Russell's cell phone contained the names of Rivera Solorio

---

[2] We note that Russell also asks us to advise the trial court regarding the applicability of recent amendments to RCW 9.94A.525 regarding prior offenses when resentencing. But advisory opinions are disfavored. *State v. Norby*, 122 Wn.2d 258, 269, 858 P.2d 210 (1993). Counsel is free to raise this issue during resentencing.

and Galeana Ramirez. Capps gave the gun to Cox, who sent the revolver to the WSP crime laboratory, along with a bullet that had been recovered from the scene of the shooting.

The WSP laboratory examiner testified that the bullet was from the .38 revolver. But no witness accused Russell of possessing or firing the gun. It is unclear what exculpatory evidence Russell would have presented if the physical gun was admitted at trial, as opposed to a photograph of the gun. Moreover, our record shows that the gun belonged to someone else and the gun was destroyed following a forfeiture order related to that individual. We see no bad faith in following a court order. Accordingly, Russell does not show that the gun was potentially useful evidence destroyed in bad faith by the State.[3]

IV.    CELL PHONE EVIDENCE

Russell next contends that the trial court erred in admitting evidence from the cell phone found at the scene of the October 24 incident because the admission violated Washington's Privacy Act, chapter 9.73 RCW, and the search warrant to search the phone was unlawful. We disagree.

Before trial, Russell argued against the State's motion in limine for the admission of the cell phone evidence. He also challenged the admission of the cell phone data report on appeal. *Ramirez*, 7 Wn. App. 2d at 283. We held that because the cell phone data report did not inculpate Russell, Matthews was not a witness against him, and Russell's confrontation rights were not implicated. *Id.* at 285. We held that the trial court did not err in allowing the evidence. *Id.* at 286. Russell now challenges the admission of the cell phone data again in his PRP.

---

[3] Russell also alleges that he received ineffective assistance of counsel for defense counsel's failure to object to evidence about the firearm. Even assuming deficient performance, Russell does not show that the outcome would have been any different if the gun evidence was not admitted; therefore, Russell cannot show prejudice to support his ineffective assistance of counsel claim.

As we set forth above, a petitioner cannot support "a previous ground for relief with different factual allegations or with different legal arguments." *Davis*, 152 Wn.2d at 671. Moreover, a petitioner must provide "justification" for not raising legal arguments below and that the interests of justice require examining the issue. *Id.*; *Yates*, 177 Wn.2d at 17.

Russell provides a different legal basis to his challenge to the admission of the cell phone data report, but he fails to show why his arguments could not have been raised in the prior action. Both Washington's Privacy Act and the law regarding search warrants for cell phones existed during his appeal. Without justification for why these arguments were not raised when Russell previously challenged this evidence, we decline to address this issue further.[4]

## V. PROSECUTORIAL MISCONDUCT

Russell argues that he was denied a fair trial based on prosecutorial misconduct. He alleges the prosecutor repeatedly misstated the law of accomplice liability in closing argument. He further argues the prosecutor repeatedly belittled witnesses, offered personal opinion on the strength of the evidence, appealed to the emotions of the jury, testified in lieu of argument to things not in evidence, and urged the jury to convict on an improper basis.

To prevail on a claim of prosecutorial misconduct, the defendant must show that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The defendant bears the burden of proving that there is a reasonable probability that a reasonable juror's judgment would have been affected by the improper argument. *See State v. Thorgerson*, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011). However, if a defendant is raising

---

[4] Russell also alleges he received ineffective assistance of counsel for defense counsel's failure to object to the cell phone evidence based on an unlawful search warrant. Even assuming deficient performance, Russell does not show that the outcome would have been any different if the cell phone evidence was not admitted; therefore, Russell cannot show prejudice to support his ineffective assistance of counsel claim.

prosecutorial misconduct for the first time on appeal, an error is waived unless the defendant establishes that the "misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61.

Here, Russell provides the law on accomplice liability and points to two jury instructions, but fails to show how the prosecutor committed prosecutorial misconduct during closing argument relating to accomplice liability. Additionally, he merely provides conclusory allegations regarding the numerus other allegations of prosecutorial miscount. A petitioner must state with particularity the factual allegations underlying his or her claim of unlawful restraint. *Rice*, 118 Wn.2d at 885-86. Bare assertions and conclusory allegations are not sufficient. *Id.* at 886.

Because Russell fails to show that the prosecutor engaged in any improper conduct, his prosecutorial misconduct claim fails.

VI.    SUFFICIENCY OF THE EVIDENCE

Russell next argues that sufficient evidence does not support his convictions because the State failed to prove that he committed the crimes beyond a reasonable doubt. He appears to base this argument on the issues he previously raised (ineffective assistance of counsel, evidentiary error, and prosecutorial misconduct) and on the basis that his family has resided in Grays Harbor County for several years. Given our disposition of the issues previously raised, and that family history in a community does not negate probable cause to commit a crime, Russell does not show error or prejudice to warrant relief. *Hinton*, 1 Wn.3d at 324.

VII.    CUMULATIVE ERROR

Lastly, Russell argues that the cumulative effect of his alleged errors requires reversal. Under the cumulative error doctrine, a petitioner may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair. *In re Pers. Restraint of Lord*, 123 Wn.2d 296,

332, 868 P.2d 835 (1994). The cumulative error doctrine "does not apply where the errors are few and have little or no effect on the outcome of the trial." *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Because we find no error related to Russell's convictions, we find no cumulative error that requires reversal.

## CONCLUSION

We deny Russell's PRP in part, grant his PRP in part, and remand to the trial court to resentence Russell based on a corrected offender score.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

I concur:

_____
Price, J.

CRUSER, C.J. (concurring)—I concur with the majority's decision, but I write separately to discuss the incorrect procedure employed by Russell's counsel in filing the "Second Supplemental Brief" in this personal restraint petition.

Our order appointing counsel in this petition instructed counsel to file a brief on the *existing petition* that Russell filed while unrepresented. The statute that governs our appointment of counsel is RCW 10.73.150, which provides

> Counsel shall be provided at state expense to an adult offender convicted of a crime and to a juvenile offender convicted of an offense when the offender is indigent or indigent and able to contribute as those terms are defined in RCW 10.101.010 and the offender:
>
> . . . .
>
> (4) Is not under a sentence of death and requests counsel to prosecute a collateral attack after the chief judge has determined that the issues raised by *the petition* are not frivolous, in accordance with the procedure contained in rules of appellate procedure 16.11. Counsel shall not be provided at public expense to file or prosecute a second or subsequent collateral attack on the same judgment and sentence.

(Emphasis added.)

This statutory provision is, by its plain language, meant to provide a petitioner who files a first personal restraint petition that is neither time barred nor frivolous with counsel to assist with the pursuit of the petition. The purpose of this provision is not to appoint counsel to raise *new* issues entirely separate from the issues raised by the petitioner. Rather, the purpose of this provision is to have counsel file a brief in the appellate court addressing the issues already raised.[5]

---

[5] Our supreme court has emphasized that the statutory right to counsel under RCW 10.73.150 applies only to those issues that have *been reviewed* by the Chief Judge and deemed not frivolous. *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 143, 196 P.3d 672 (2008) ("In such cases, the issues [warranting counsel at state expense] generally are limited to those raised in the petition and identified by the court as having some merit.")

Here, counsel filed a Second Supplemental Petition that raised four entirely new issues, each of which are time barred. At no point does counsel address the time bar in the brief. This failure suggests that counsel believed the new issues raised in the supplemental brief would be deemed timely merely because the original petition was timely. This is incorrect. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 938-39, 952 P.2d 116 (1998); *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 142, 196 P.3d 672 (2008) (plurality opinion). Moreover, counsel did not address, in her briefing, each of the issues raised by the petitioner. Numerous claims went unaddressed. As such, Russell effectively did not enjoy the full benefit of counsel under RCW 10.73.150(4).

If counsel wished to raise new issues that were not raised by Russell in his original petition, counsel should have either moved to amend the original petition pursuant to RAP 16.8(e)[6] or filed a separate personal restraint petition[7] on Russell's behalf along with a notice of appearance and verification from Russell pursuant to RAP 16.7(7).

The majority in this case chose to treat counsel's Second Supplemental Brief as an amended petition, and the State provided no briefing to this court on whether the mixed petition rule should have been applied to the petition. While I concur with the majority's resolution of the issues raised, I write separately to emphasize the importance of counsel following our order

---

[6] A formal motion to amend a petition is not necessary when the amended petition is timely. *In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 327, 394 P.3d 367 (2017). But Russell's amended petition (denoted as his Second Supplemental Brief) was not timely.

[7] Such a petition would not entitle Russell to counsel at public expense under RCW 10.73.150(4).

appointing counsel and filing a brief in support of the actual claims brought in the client's petition, as well as following the proper procedure governing personal restraint petitions and the time bar set forth by the legislature in RCW 10.73.100.

_Cruser, C.J._
Cruser, C.J.
